## Stephen T. Olney, Receiver, *v.* Euclid Chadsey.

In a suit by the receiver of a bank against a former president, the books of account of the bank, regularly kept, are admissible as evidence of the account entered on them against the president, when accompanied with evidence that they were open to his inspection and probably seen by him and that he made no objection to the account there entered, as proof of the implied admission by him of the correctness of the entry; and the bank's returns to the commissioners, examined and allowed by him, are admissible as like proof, upon evidence that the amount therein returned as due to the bank from its directors could not be made up, without including therein the amount of his account as stated in the books of the bank.

The book of minutes of directors' meetings, regularly kept by the cashier, is admissible as evidence of who of the directors were present at, and of what was done by the board; at a particular meeting, as between one who was president and a director of the bank at the time the minute was made, and a receiver of the bank, who represents the corporation.

Olney, receiver, *v.* Chadsey.

The president of a bank, in Rhode Island, has no authority, *virtute officii,* to surrender or release the claims of the bank against any one, and can only derive such authority from the vote of the board of directors, or from their assent, express or implied.

Where the charter of a bank provides that the president shall receive no compensation as such, unless it be voted to him by the board of directors, any service that he may do for the bank will be presumed to be done by him as president, unless, from the nature of the service, or from the evidence, it appears, that the service was rendered outside of the duties of his office.

The omission of a judge to instruct the jury upon a matter of law upon which his instruction is not requested, is no ground for new trial; especially where, from the nature of the case, as disclosed by the motion for a new trial, the omission could have done the party moving no disservice.

The court cannot consider a motion for a new trial on the ground of a verdict against evidence, unless the whole evidence, or the substance of it, be reported to the court by, or with the allowance of, the judge trying the cause.

THIS was an action of assumpsit brought by the plaintiff, as receiver of the Farmer's Bank of North Kingstown, an insolvent bank now in the process of being wound up, against the defendant, formerly president and manager of said bank.

The action, which was for a balance of account appearing to be due upon the books of the bank from the defendant to the bank, was tried at the present term, under the general issue, before Mr. Justice Brayton, with a jury, when the books of the bank stating the account sued, accompanied by the evidence of two of the cashiers of the bank that these books were kept in the bank, and were open to the inspection of the defendant as an officer of the bank, and, as one of them swore, he believed were seen by the defendant, and also certain bank statements, made under oath of the cashier to the bank commissioners, which set forth an amount of indebtment due from directors to the bank, which could only be made up by including the balance of account now sued for, it being proved that these statements were examined, though not made up by the defendant, were allowed to pass to the jury, in evidence that said balance was due, notwithstanding the objection of the defendant to their admissibility; the judge instructing the jury that the entries in the books, if appearing to be made in the regular course of the bank business, with the evidence that the books were open to the defendant's inspection, and that he was president of the bank, and presumed to know about the business and affairs of the bank, were before the

jury, for them to say therefrom, whether the defendant did not impliedly admit that the sums so charged to him were due from him to the bank.

It further appeared, that the defendant having, as a witness on his own behalf, sworn in his direct examination, that he never knew or suspected that there was anything on the books of the bank against him, and that he had never heard of a man by the name of Deacon, or of any note of any such man, the plaintiff was allowed, against the objection of the defendant, to ask him in cross examination, " If he had not seen his own account in either May, June, July or August, or a credit on the books to him of $153, and if it arose from the discount of the Deacon note ? or had not seen an entry in the discount book, of a note made by Edward Deacon, dated July 3d, for $1000, payable at three months ? and if he recognized the handwriting of Jennings, the cashier, in an entry of the note to him ? If he was present at a directors meeting when certain notes, some thirteen in number, were discounted, among which was the note of Edward Deacon,— the amount of the notes discounted being equal to one-third of the whole capital of the bank ? " The books of the bank were not allowed to pass to the jury further than to show the account against the defendant; and the record of the meeting of the directors on the day when the Deacon note purported to be discounted. It being claimed by the defendant that there had been a settlement of all accounts between himself and the bank, and by the plaintiff, upon the evidence, that no one participated in the settlement but the defendant and the president of the bank who succeeded him, and that the president had no authority to make such settlement, the judge charged the jury, that the president of the bank, as such, had no authority, under the charter of the bank, to contract for the bank, or to release any claim of the bank, that power being in the board of directors ; and to make his acts binding upon the bank, there must be some evidence that such authority had been conferred upon him by the bank, either expressly, or it might be by former settlements made by him, which were known to the bank, or by some assent of the board of directors."

It further appeared, that the counsel for the plaintiff having

read from the charter that the president of the bank, as such, should receive no compensation unless voted to him by the directors, the judge instructed the jury, that if an officer of a bank performed any service for the bank, it was to be presumed that he performed it as such officer, unless from the nature of the services testified to, or from the evidence it appeared, that the service was rendered outside of the duties of such office.

A verdict having been rendered against the defendant for the sum of $1017.30, he now moved for a new trial, on the ground, that the several rulings and instructions made and given as above were erroneous in matter of law, and because the court omitted to instruct the jury, (no request appearing to have been made to instruct them on the point,) on the effect in evidence of the delivery up by the bank to the defendant, upon settlement, of a certain check and draft, and also, because the verdict was against the weight of the evidence. No report of the evidence, allowed by the judge, as required by the rule of court, was presented in support of the last ground of new trial.

*William H. Potter, for the motion.*

*Bradley, against it.*

AMES, C. J. The account of the bank against the defendant, as it stood upon the bank books during his presidency, accompanied by the proof that the books were regularly kept, and open to his inspection, and were probably examined by him, was proper evidence to pass to the jury, not, as in ordinary book account, in direct proof of the charges in the account, but as an implied admission of them by the defendant; since he did not object to them when he might be presumed to know what they were, and was in a position in which he might object to them with effect. The evidence stands, in principle, upon the same footing with an account rendered, which, if not objected to within a reasonable time, is presumed to be admitted, and is treated as an account stated. It affords a presumption against the defendant, not indeed from his declaration, but from his silence and acquiescence ; belonging to a class of evidence which declines by gradual shades from the most express and solemn admissions, down to expressions and acts which afford but remote and weak presumptions as to the particular fact in question. 2 Starkie on Ev. 37 ; 1 Ib. (Sharswood's ed.) 762, 763.

The returns made by the bank to the bank commissioner during the defendant's presidency, and which set forth an amount of indebtment from directors to the bank, which could not be made up without including this account against the defendant, rest, as evidence, upon the same support,—the defendant's admission. Although made up by the cashier, they were examined and allowed by the defendant, who, from his position and duty, must be presumed to have ascertained their minute correctness, which could only have been done by examining the items of which they were composed. The weight of such evidence is wholly for the jury; and is to be measured by the standard of common experience and knowledge of mankind. *Supra.*

We are at a loss to perceive the ground of objection to the cross examination of the defendant, which was merely a close following him up, upon the ignorance which he pretended, in his direct examination, of the existence of any account against him on the books of the bank. When he had sworn, too, that he was ignorant of any such note as the Deacon note, and even, that he had never heard of such a man as Edward Deacon, it seems to us quite proper, that, in cross examination, his attention should be called to the discount book, and the discount of that note and several others by himself and other directors, whom the record of the directors meeting, kept by the cashier, showed to have been present on the occasion. Certainly, the minute-book of that meeting,—kept by an authority which he recognized,—was good evidence of who were present, and what was done at the meeting, as between him, a member and officer of the corporation, and the plaintiff, who officially represents it. Starkie on Ev. (Sharswood's ed.) 455, side, 411, top, n. 1, 457, side, 413, top, n. 1.

Nor do we see any fault in the instructions of the judge to the jury, in relation to the power of the president of the bank who succeeded the defendant in that office, to give up to the defendant the securities which the bank held against him; or in relation to the latter's claim against the bank for services performed by him whilst holding the office of president. The president of a bank in Rhode Island has no authority, as such, to surrender or release the claims of the bank against any one; and

if he possesses such authority, it is not *virtute officii*, but must be derived, as the jury were instructed, from the board of directors, by their vote, or from their assent, express or implied. Again, the defendant, as president of this bank, could claim no compensation for his services in that capacity, unless, as a clause in the charter of the bank provides, such compensation is voted to him by the directors; and if he performed any service for the bank, it was to be presumed, as the court charged, that he did it as president, unless from the nature of the services, or from the evidence, it appeared, that the service was rendered outside of the duties of his office.

The imputed neglect of the judge to instruct the jury upon the well known presumption arising from the delivery up to a debtor, upon settlement, of the securities then held against him, and of his possession of them, which it does not appear that he was requested to do, could have done no disservice to the defendant; as enough of the case appears, from the motion, to show us, that the question went deeper than this, to wit, to the power of the then president of the bank, under the evidence, to deliver up to the defendant these securities.

The whole evidence, or its substance, not being reported to us by or with the allowance of the judge trying the cause, no foundation is laid for the last ground for a new trial taken by the motion, that the verdict is against the weight of evidence; and upon all the grounds set down in it, the motion must be dismissed, with costs, and judgment be entered upon the verdict.